IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAUL LEO THAXTON, II,                )
                                      )
            Plaintiff                 )
                                      )
v.                                    )        NO. 1:20-cv-00616-SRW
                                      )
KILOLO KIJAKAZI,[1]                   )
Acting Commissioner of                )
Social Security,                      )
                                      )
            Defendant.                )

MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION AND ADMINISTRATIVE PROCEEDINGS

Plaintiff, Paul Leo Thaxton, II, filed an application for Disability Insurance Benefits ("DIB") under Title II and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on October 17, 2017, alleging disability onset as of July 3, 2017, due to Asperger's syndrome, attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), learning disability, high sugar level, high cholesterol, kidney problems, anxiety, and depression. (Tr. 22, 206-18, 241).[2] Plaintiff's claims were denied at the initial level on January 24, 2018. (Tr. 114-23). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 22, 127). The ALJ heard the case on August 26, 2019, when Plaintiff appeared with counsel and gave testimony. (Tr. 22, 43-67). Testimony was also received by a vocational expert. (Tr. 68-72). At the conclusion of the hearing, the matter was taken

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the actual transcript pages are denoted by the abbreviation "Tr."

under advisement until December 4, 2019, when the ALJ issued a written decision finding Plaintiff

not disabled. (Tr. 22-37). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since July 3, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: major depressive disorder, attention deficit hyperactivity disorder, borderline intellectual functioning, post-traumatic stress disorder, and lumbago (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently climb ramps and stairs, but he can only occasionally climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He is limited to the simple, routine tasks of unskilled work that involve simple work decisions and few changes that are gradually introduced. He can occasionally interact with coworkers and supervisors, but supervision should be simple and direct. He should have no contact with the general-public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 2, 1973 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

2

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 3, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24, 25, 27, 36, 37).

On June 24, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 2-6), thereby rendering that decision the final decision of the Commissioner. The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and to award benefits, or, alternatively, to remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1, at 1-2; Doc. 14, at 18-19. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.    STANDARD OF REVIEW AND REGULATORY FRAMEWORK

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial

3

evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## III.   ISSUES ON APPEAL

Plaintiff raises three issues on appeal, arguing that the ALJ failed to evaluate properly the medical opinion evidence in determining his mental RFC; that the ALJ relied on a flawed hypothetical question to the vocational expert; and that the ALJ failed to evaluate properly Plaintiff's subjective statements. (Doc. 14, at 2). The Commissioner maintains that the ALJ properly evaluated the medical opinion evidence in assessing Plaintiff's mental functional capacity; that the mental functional capacity finding adequately accounts for the moderate "paragraph B" findings the ALJ made at step three of the sequential evaluation; and that substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations were not entirely consistent with the evidence of record. (Doc. 16, at 5, 17, 19).

## IV.   DISCUSSION

### A.   <u>Evaluation of the Medical Opinion Evidence</u>

As to evaluating Plaintiff's mental RFC, Plaintiff argues that the ALJ erred by making a conclusory finding that the opinions of Fernando Lopez, M.D., were unsupported by treatment records from the period at issue. (Doc. 14, at 6). Plaintiff also maintains that the ALJ erred by rejecting Dr. Lopez's opinions because medical documents described Plaintiff as "stable" with treatment and because Plaintiff got married and was engaged in other activities of daily living. *Id*. at 8, 9. Plaintiff further argues that the ALJ failed to evaluate properly the opinion of Brent Tucker, Ph.D. *Id*. at 10.

The Social Security Administration has recently revised its regulations regarding the consideration of medical evidence, applying those revisions to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Plaintiff filed her claim on October 19, 2017, (Tr. 20), so the revised regulations apply. *See* 20 C.F.R. § 404.1520c. The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whatever medical sources a claimant chooses to use. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). In evaluating claims filed March 27, 2017 or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650-SPF, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the agency] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). The relationship with the claimant includes length of the treatment relationship, the frequency of examinations, the purpose of the

treatment relationship, the extent of the treatment relationship, and the examining relationship. 20 C.F.R. § 404.1520c(c). "The most important factors . . . [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *See* 20 C.F.R. § 404.1520c(a)-(c). The ALJ may but is not required to explain how he considered the other remaining factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)(2)). The ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

The agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). State agency medical or psychological consultants are considered experts in Social Security disability evaluation. *Hanisee v. Comm'r of Soc. Sec.*, 797 F. App'x 449, 450 (11th Cir. 2019); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). However, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence . . . as appropriate." *Id*.

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Rodriguez v. Comm'r of Soc. Sec.*,

No. 618CV503ORL18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id*. at 1055-56. An ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . . .] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).

In assessing Plaintiff's mental RFC, the ALJ determined that Plaintiff was "limited to the simple, routine tasks of unskilled work that involve simple work decisions and few changes that are gradually introduced"; that he could "occasionally interact with coworkers and supervisors, but supervision should be simple and direct"; and that he "should have no contact with the general-public." (Tr. 27). In determining Plaintiff's RFC, the ALJ cited extensively to the medical record. The ALJ noted that shortly after his release from prison in October of 2017, Plaintiff began mental health treatment at SpectraCare. (Tr. 30, 372). The ALJ stated that on October 30, 2017, Plaintiff reported that he was currently experiencing anxiety and was afraid to go outside due to fear that someone was trying to get him, and that he had a depressed mood, had social withdrawal, and

lacked appetite. (Tr. 30, 377). The ALJ noted that on mental status examination Plaintiff had normal orientation times four, he was appropriately dressed and groomed, he had appropriate facial expression, he had appropriate mood and affect, he had a realistic self-concept, his recent and remote memory were intact, he was coherent and goal-directed, but he had a rambling thought process and suspicious thought content—with paranoia that someone was following him and trying to take him back to jail—and he had limited judgment and insight. (Tr. 30, 383-84). The ALJ also noted that Plaintiff reported flashbacks and nightmares regarding childhood abuse and an extensive history of suicide attempts but that he denied any suicidal or homicidal ideation at that time. (Tr. 30, 381). The ALJ stated that in December 2017 Plaintiff denied any suicidal and homicidal ideation and Plaintiff's mood was stable, but he reported that his anxiety was getting worse and that he did not want to leave home. (Tr. 31, 404-05).

The ALJ then discussed Plaintiff's January 2018 examination by state agency consultant Brent Tucker, Ph.D. (Tr. 31, 414-16). Dr. Tucker's report showed that Plaintiff currently had high anxiety and was receiving mental health treatment at SpectraCare; Plaintiff reported that large crowds were a trigger and he was always looking over his shoulder as he felt like everyone was out to get him. (Tr. 31, 415). On a mental status examination, Dr. Tucker observed that Plaintiff appeared disheveled, but that rapport was quickly established, and that Plaintiff was cooperative. (Tr. 31, 415). The ALJ noted, according to the medical record, that Plaintiff had a depressed mood and full affect; his speech was at an appropriate rate and volume; his conversation was reciprocal; he was alert and oriented to time, place, and person; his recent memory was intact; he could recall three words immediately and after two minutes; he was able to read and write simple sentences; and he could perform simple addition and subtraction. (Tr. 31, 415-16). The ALJ also noted that Plaintiff was unable to perform mentally effortful tasks, such as counting backwards by sevens; he could reproduce a geometric shape; he could follow simple instructions by taking a piece of paper,

10

folding it in half, and placing it on the floor; he could correctly repeat a sentence; his thoughts were fluid; and he was able to track conversation. (Tr. 31, 416). The ALJ further noted that Plaintiff did not have suicidal or aggressive thoughts; he had depressive thoughts; he was free of delusions or hallucinations; his insight was appropriate; and his judgment was intact. (Tr. 31, 416). The ALJ stated that Dr. Tucker diagnosed Plaintiff with major depressive disorder, moderate with anxious distress, and ADHD, and recommended assessment to rule out intellectual disability disorder. (Tr. 31, 416).

The ALJ reported that SpectraCare counseling progress notes dated February 12, 2018, showed that Plaintiff was active in discussion, his mood was stable, he reported finding a girlfriend, and he still primarily stayed in his room. (Tr. 31, 428). Similarly, in April 2018 during group therapy sessions, Plaintiff was active in the discussion and his mood was stable. (Tr. 31, 418, 420).

The ALJ noted that in May 2018, Fernando Lopez, M.D., diagnosed Plaintiff with depressive disorder and post-traumatic stress disorder ("PTSD"). (Tr. 32, 432). On mental status examination, Plaintiff's speech was clear and thought process was appropriate; his associations were intact and judgment and insight were good; he was oriented times four; no problems were detected with recent or remote memory; his concentration and attention were intact; and his language, fund of knowledge, and mood and affect were appropriate. (Tr. 32, 433-35). Plaintiff's psychiatric diagnoses and status were reported as stable. (Tr. 32, 434-35).

The ALJ noted that in a June 12, 2018, group therapy session, Plaintiff reported that he recently had gotten married, and he shared some pictures from his wedding. (Tr. 32, 422). On June 26, 2018, group therapy records showed that Plaintiff was active in discussion, his mood was stable, and he shared that his family was understanding of his anxiety and that he preferred to remain secluded at home, which did not interfere with his relationships. (Tr. 32-33, 424).

The ALJ stated that progress notes from August 21, 2018, reflected that Plaintiff was active

11

in discussion at therapy and his mood was stable. (Tr. 32, 448). Plaintiff reportedly had a positive response to interventions and progress towards goals and objectives, and he was getting help from his adopted mother, his ex-wife's mother, and his current wife. (Tr. 32, 448). On August 30, 2018, Plaintiff reported that he was doing "good" and that his medications were helping. (Tr. 32, 453). Plaintiff stated that his sleep was poor, but said that was due to his wife's leaving the television on all night. (Tr. 32, 453). Plaintiff's mood was reported as stable. (Tr. 32, 454). Plaintiff's mental status examination reflected that Plaintiff's speech was clear and his thoughts were appropriate; his associations were intact; his judgment and insight were good; he was oriented times four; no problems were detected with recent and remote memory; his concentration and attention were intact and language appropriate; and his fund of knowledge and mood and affect were appropriate. (Tr. 32, 453-54). Plaintiff was noted as "doing well," and diagnosed with "moderate major depressive disorder, recurrent episode, stable," and "post-traumatic stress disorder, stable." (Tr. 32, 454).

On January 10, 2019, Dr. Lopez completed a mental RFC assessment form on Plaintiff's behalf. (Tr. 33, 444-46). Dr. Lopez indicated that Plaintiff had "marked" limitations (defined as an impairment that seriously limits the ability to function) in his ability to (1) get along with co-workers or peers; (2) understand, remember, and carry out simple instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and (6) respond to customary work pressures. (Tr. Tr. 33, 444-445). Dr. Lopez indicated that Plaintiff had "moderate" limitations (defined as an impairment that affects but does not preclude functioning) in his ability to (1) interact appropriately with the general public; (2) perform daily activities, such as attending

meetings, working around the house, and socializing with friends and neighbors; (3) understand, remember, and carry out repetitive tasks; (4) sustain a routine without special supervision; (5) make simple work-related decisions; (6) respond appropriately to supervision; and (7) respond appropriately to changes in the work setting. (Tr. Tr. 33, 444-445).

The ALJ further observed that, on May 24, 2019, Plaintiff was active in the discussion at his therapy session and his mood was stable. (Tr. 33, 503). Plaintiff reported that he left his wife due to "mental and emotional abuse." (Tr. 33, 503). The therapist's overall impression of the session was positive, despite the announcement of his impending divorce. (Tr. 33, 503-04). The ALJ indicated that records show that in June 2019, Plaintiff was active during the discussion at his therapy session, his mood remained stable, and that he had made progress toward his goals and objectives. (Tr. 33, 505). The ALJ further noted that Plaintiff discussed the difficulty of finding employment due to his felony conviction. (Tr. 33, 505).

In evaluating the opinion evidence, the ALJ found the following:

> With regard to opinion evidence, the opinion of Dr. Lopez is only partially persuasive, as his treatment records do no support such significant limitations (Exhibit B12F). Progress records document that mental status examinations have been normal or minimally abnormal. He has actively participated in individual and group therapy discussions and his mood has consistently been documented as stable. Progress notes document that he reported he was doing good and his psychotropic medications helped. The evidence further documents that during the period after his release from prison until the date Dr. Lopez completed his mental residual functional capacity assessment, the claimant was able meet and form a relationship with a woman and marry this woman. Counseling progress notes document that he shared pictures from his wedding at a group therapy session (Exhibit B11F, p. 6). The undersigned accommodates the claimant's mental limitations within his finding of maximum residual functional capacity for simple, routine tasks of unskilled work that involve no more than simple work decisions and few changes that are gradually introduced. He can occasionally interact with coworkers and supervisors, but supervision should be simple and direct. He should have no contact with the general-public.
>
> In January 2018, consulting psychologist Dr. Tucker reported that the claimant performed well mental status examination. He opined that the claimant has the ability to understand, remember, and carry out instructions. He has a moderately diminished ability to relate to others. Dr. Tucker further reported the claimant has

moderate to severe diminished ability to respond appropriately to supervisors, coworkers, and work pressures in a work setting (Exhibit B10F). The Administrative Law Judge finds Dr. Tucker's opinion only partially persuasive, as the evidence as a whole, set forth above, does not support severe limitations.

The Administrative Law Judge finds the opinion of state agency psychologist Linda Duke, Ph.D., most persuasive and most supported by and consistent with the medical evidence of record (Exhibit B3A), as the claimant was not really truthful with psychologist saying he saw people killed, but he admitted under oath that he did not (Exhibit B13F, p. 4).

(Tr. 35).

Plaintiff argues that documentation of anxiety, isolation/withdrawal from others, paranoia/ unreasonable fears, depression, a history of traumatic experiences, sleep disturbances, decreased motivation/energy, and appetite disturbances support Dr. Lopez's restrictive limitations. (Doc. 14, at 6). However, the court notes that some of Plaintiff's complaints were based upon subjective reports rather than objective findings. Further, the ALJ thoroughly considered the entire medical record, including discussing SpectraCare's progress notes, as well as the diagnoses and opinions of Dr. Lopez and Tucker. The ALJ found that the progress records showed that Plaintiff's mental status examinations were normal or minimally abnormal, Plaintiff actively participated in individual and group therapy discussions, his mood was stable, he reported that he was doing "good," and his psychotropic medications helped. (Tr. 35). The ALJ also found that the records showed that after being released from prison Plaintiff was able to meet and form a relationship with a woman and get remarried. (Tr. 35).

Plaintiff objects to the ALJ's relying on documentation describing Plaintiff as "stable," because the ALJ did not cite to any evidence that showed that Plaintiff had significant or sustained improvement to a degree that conflicted with the opinion of Dr. Lopez. (Doc. 14, at 8). Plaintiff argues that there is a difference between a person who responds to treatment and one who is able to enter the workforce. *Id*. However, in examining the entire record, the ALJ properly considered whether the limitations assessed by Dr. Lopez were consistent with the evidence from other

medical and nonmedical sources. The records *consistently* showed that Plaintiff actively participated in individual and group therapy discussions, his mood was stable, and that he reported that he was doing "good." The records also show that Plaintiff's psychotropic medications helped. Further, the records showed that Plaintiff had the ability to meet and marry someone.

Plaintiff objects to the ALJ's relying on Plaintiff's ability to meet a romantic partner online and get married as a way of contradicting Dr. Lopez's opinion. (Doc. 14, at 9). However, Plaintiff alleged in his function report that his mental impairments prevented him from working because he could not socialize with people or be around them and that he was scared to be around people. (Tr. 263-65). Thus, the ALJ's consideration of evidence showing that Plaintiff could be around new people was a relevant factor, among others, in determining Plaintiff's mental RFC. *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (internal citation omitted); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of her impairments). Plaintiff has made no showing, as he argues, that the ALJ placed "undue weight" on Plaintiff's activities of daily living.

Plaintiff also maintains that the ALJ failed to give appropriate consideration that Dr. Lopez, a psychiatrist, is a specialist and treated Plaintiff regularly over a long period of time for his mental issues. (Doc. 14, at 10). However, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, the regulations do not require the ALJ to explain how he considered the factors, "relationship with the claimant" and "specialization." 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).[5]

Plaintiff next argues that the ALJ failed to consider the consistency of the opinions and findings from Dr. Tucker and those from the treating psychiatrist. (Doc. 14, at 11). Plaintiff also maintains that the ALJ wholly ignored the mental status abnormalities identified by Dr. Tucker, including findings of a disheveled appearance, a depressed mood, an inability to perform mentally effortful tasks, and depressive thinking. *Id*. However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record. *Cox v. Comm'r of Soc. Sec.*, No. 3:21-CV-53-JMV, 2022 WL 834294, at *3 (N.D. Miss. Mar. 21, 2022) ("Although Plaintiff urges this Court to remand because the ALJ did not provide an explicit discussion of the factors of supportability and consistency in the same paragraph in which he found this opinion was not persuasive, the Fifth Circuit has held that '[a] case will not be remanded simply because the ALJ did not use magic words.' Rather, '[r]emand is only appropriate 'where there is no indication the ALJ applied the correct standard.'" (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021))) (internal quotation marks omitted); *Cueva v. Kijakazi*, No. 1:20-CV-000407, 2021 WL 4192872, at *5 (E.D. Cal. Sept. 15, 2021) ("An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion."). Here, the ALJ specifically found that Dr. Tucker's opinion was partially persuasive based upon the evidence "as a whole," as "set forth above." (Tr. 35). The ALJ discussed in detail Plaintiff's treatment history with SpectraCare as well as the examination findings of Dr. Tucker. (Tr. 30-35). In summarizing Dr. Tucker's findings, the ALJ found that rapport was quickly established; Plaintiff was cooperative;

---

[5] In fact, the ALJ considered Plaintiff's treatment history with Dr. Lopez going back to 2013, four years prior to the relevant period. (Tr. 29-35).

he was alert and oriented to time, place, and person; his recent memory was intact; he was able to read and write simple sentences; he could perform simple addition and subtraction; he could follow simple instructions; his thoughts were fluid; he was able to track conversation; his insight was appropriate; and his judgment was intact. (Tr. 31, 415-16). As previously noted, the ALJ also cited other evidence documenting mental status examinations that were primarily normal. An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, . . . we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (citation omitted).

Lastly, Plaintiff argues that the ALJ failed to explain how the opinions from the non-treating, non-examining source, who reviewed a markedly undeveloped record, are better supported and consistent with the record than the well-supported opinions from the treating board-certified psychiatrist and examining psychologist. (Doc. 14, at 12). However, the revised regulations no longer require an ALJ to assign a specific weight to a medical opinion or prior administrative finding based on a formal hierarchy of evidence. *Morris v. Soc. Sec. Admin., Comm'r*, No. 2:21-CV-00029, 2022 WL 303303, at *3 (N.D. Ala. Feb. 1, 2022) ("The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources.'") (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). The record reflects that the ALJ considered the entire evidence, as previously discussed by the court, in concluding that Dr. Lopez and Dr, Tucker's opinions were

17

not fully persuasive, and the court therefore finds that substantial evidence supports the ALJ's conclusion. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

**B.      Hypothetical Question to the Vocational Expert**

Plaintiff argues that the ALJ failed to account for a finding that Plaintiff had moderate restrictions in concentration, persistence, or pace in the accepted hypothetical to the VE. (Doc. 14, at 12). Plaintiff maintains that, although the ALJ found that Plaintiff had moderate limitations in his ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage himself, (Tr. 25-26), the ALJ's hypothetical to the VE limited Plaintiff only to simple, routine tasks of unskilled work that involve simple work decisions and ordinarily have few changes in the work setting that are gradually introduced and with occasional interaction with coworkers and supervisors, but the supervision should be simple and direct-type supervision with no interactions with the general public. (Doc. 14, at 13-14; Tr. 69). Plaintiff contends that these limitations do not say anything about Plaintiff's ability to maintain a particular work pace over the course of a workday or workweek, nor do they describe limitations in Plaintiff's ability to persist at tasks. *Id.* at 14.

The ALJ's finding with respect to Plaintiff's ability to concentrate, persist, or maintain pace was one of four ratings he made in considering the four broad functional areas pursuant to the psychiatric review technique ("PRT") used in assessing mental impairments. (Tr. 25-27); *see* 20 C.F.R. § 404.1520a(c)(3), (e)(4); 20 C.F.R. § 416.920a(c)(3), (e)(4). In the decision, the ALJ stated that the limitations identified in the "paragraph B" criteria were not a residual functional capacity assessment but were used to rate the severity of mental impairments at steps 2 and 3 of

the sequential evaluation process and that the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process required a more detailed assessment (Tr. 27). In assessing Plaintiff's mental RFC, the ALJ considered the entire record and found that Dr. Lopez's and SpectraCare's records showed that Plaintiff had no problems with recent or remote memory, his concentration and attention were intact, and his language was appropriate. (Tr. 32). Dr. Tucker concluded that Plaintiff had the ability to understand, remember, and carry out instructions. (Tr. 34). The ALJ also noted that Plaintiff testified that he drives and can play video games or watch TV for four to five hours at a time, which was inconsistent with an inability to concentrate and persist. (Tr. 35). Based upon the evidence, the ALJ properly limited Plaintiff to simple, routine tasks of unskilled work that involve simple work decisions and few changes that are gradually introduced. (Tr. 27). *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) ("[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies.") (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)); *Washington v. Soc. Sec. Admin., Com'r*, 503 F. App'x 881, 883 (11th Cir. 2013) ("Because the evidence showed that Washington could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed Washington's limitations as to concentration, persistence, or pace.").

### C.   Plaintiff's Subjective Statements

Plaintiff objects to the ALJ's finding that Plaintiff made inconsistent statements regarding the cause of his PTSD (reporting to a treating source that he saw people killed when he was in prison but testifying that he only saw people attacked and did not know if they died); that he made inconsistent statements regarding problems sleeping at night and his need to sleep during the day;

that his medications helped with his symptoms; that he can perform some activities of daily living, including playing video games and watching TV for several hours at a time; and that he had problems finding a job due to his felony convictions. (Doc. 14, at 17).

In determining whether a claimant is disabled, the claimant's symptoms are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. *Id*.; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Wimberley v. Berryhill*, No. CV 17-00558, 2019 WL 1418056, at *13 (S.D. Ala. Mar. 29, 2019) ("The ALJ is not required to accept a claimant's allegations of pain or other symptoms."). The regulations set out a two-step process for the evaluation of subjective complaints. *Id*.; SSR 16-3p, 2017 WL 5180304, at *3. To establish a disability based on testimony of pain and other symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3. "Consideration of a claimant's symptoms thus involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Denny v. Kijakazi*, No. 8:20-CV-1573, 2022 WL 831901, at *7 (M.D. Fla. Mar. 21, 2022); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in

the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); *Lopez v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-00986, 2020 WL 6203876, at *6 (N.D. Ala. Oct. 22, 2020). In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9. If the ALJ discredits Plaintiff's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).[6]

---

[6] In *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841 (11th Cir. 2017) the Eleventh Circuit stated:

> SSR 16-3p rescinded the Social Security Administrations prior rule for subjective symptom evaluation, SSR 96-7p, to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will 'not assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'"

*Id*. at 848; *Hartley v. Kijakazi*, No. 3:20-CV-1266, 2021 WL 5881671, at *3 (M.D. Fla. Dec. 13, 2021) ("'The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.'") (quoting *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original)); *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *14 n.14 (N.D. Ohio

The ALJ considered Plaintiff's allegations from his hearing testimony and function report, along with the medical evidence, and properly found that Plaintiff's subjective complaints were unsupported for the reasons explained throughout the ALJ's decision, including largely normal mental status examination findings, and the fact that Plaintiff was able to do well and show improvement with his psychiatric medications, that he was able to meet a romantic partner and get remarried during the relevant period, and that he was able to play video games—some violent—or watch television for four to five hours at a time. (Tr. 27-36, 48-67, 257-66). The ALJ properly considered both objective and subjective evidence in evaluating Plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms. *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *8-9.

As to Plaintiff's complaints regarding his sleep and his statement about seeing people killed in prison, the ALJ stated the following:

> The claimant's post-traumatic stress disorder (PTSD) is a bit questionable since it is based on him statements to treating source of how he saw people killed while in prison (Exhibit B13F, p. 4). When questioned by the Administrative Law Judge, the claimant testified he did not see anyone killed, but some people were attacked. He did not know if they died. Nevertheless, the Administrative Law Judge accommodates PTSD when arriving at the claimant's maximum residual functional capacity, finding he can have no contact with the general-public. He can occasionally interact with coworkers and supervisors, but supervision should be simple and direct.
>
> . . . .

June 4, 2018), *report and recommendation adopted*, No. 1:17CV1118, 2018 WL 3093696 (N.D. Ohio June 22, 2018) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p."); *Cook v. Comm'r of Soc. Sec.*, No. 1:19-CV-1068, 2020 WL 7253307, at *7 (S.D. Ohio Dec. 10, 2020), *report and recommendation adopted*, No. 1:19-CV-1068, 2021 WL 22522 (S.D. Ohio Jan. 4, 2021) ("The elimination of the word 'credibility' from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase 'credibility determination.' Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed 'consistency determination' under SSR 16-3p, with few exceptions.").

22

The claimant alleges that his medications make him sleepy during the day and he has to take a nap, but the evidence indicates that he also, takes Trazodone at night to help him sleep, which is inconsistent. The evidence further documents that the claimant reported having poor sleep because his wife was leaving the TV on all night (Exhibit B13F, p. 12).

The claimant testified that his nightmares are controlled with medications. Progress notes from SpectraCare document the claimant reported he was doing good and his medications were helping (Exhibit B13F, p. 7). The claimant testified that he drives and says he can play video games or watch Netflix on TV for four to five hours at a time, which is inconsistent with an inability to concentrate and persist. Progress noted document that the claimant reported he had difficulty finding jobs because of his felony convictions (Exhibit B16F, p. 4).

(Tr. 34-35).

The ALJ properly cited evidence in the record that contradicted Plaintiff's statements regarding his sleeping and seeing people killed. In any event, the ALJ found that Plaintiff's PTSD was a severe impairment and therefore included related limitations in the RFC, limiting Plaintiff to having no contact with the general public and occasionally interacting with coworkers and supervisors, with supervision that should be simple and direct. (Tr. 24, 27, 34). Plaintiff fails to provide any evidence showing that he was more limited by his PTSD. Lastly, the ALJ noted a document that reported Plaintiff's statement that he had difficulty finding jobs because of his felony convictions. Such a statement could be relevant in determining whether Plaintiff was prevented from working for reasons other than disability. 42 U.S.C. § 423(d)(1)(A). In any event, such discussion was not significant to the ALJ's ultimate conclusion.

Accordingly, the court finds that the Commissioner's decision is supported by substantial evidence.

## V.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED.  A separate judgment will issue.

DONE, on this the 30th day of March, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge